UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FILED - GR

04 JAN 28 AM 9:43

RONA~   ~ ~ ~ SR., CLERK
U.S. DISTRICT COURT
WESTERN DISTRICT MICH
BY /ffr/

IN RE:  Petition for Admission of Oscar Amos Stilley

_____/

**1:04 MC0009**

## OPINION

Pending before the court is the Petition of Oscar A. Stilley for Admission to practice

law in the Western District of Michigan.  The Petition was initially reviewed by the Honorable

Gordon J. Quist pursuant to W.D. Mich. LCrR57.1, who denied the Petition.  Pursuant to Rule 57.1,

a dissatisfied applicant may file a petition for a hearing before a three-judge panel.  Petitioner sought

review and a three-judge panel was appointed by the Court.  A hearing on the petition for admission

was held on January 12, 2004, and the issue is now before the panel for decision.

### Background

In denying Mr. Stilley's petition, Judge Quist pointed out that the petitioner's past

actions were "inconsistent with the standards of professional conduct this Court requires of attorneys

practicing in this district, towards clients, counsel and the Court."  In support of this finding, Judge

Quist relied primarily but not entirely on four separate Findings and Orders entered by the Arkansas

Supreme Court Committee on Professional Conduct (the "Committee") during 2001, pertaining to

Mr. Stilley.  Each of these orders, in turn, discusses a number of violations of the Arkansas Model

Rules of Professional Conduct found to have been committed by the petitioner.  The four Orders and

the violations contained within them are summarized below:

1

On August 14, 2001, the Arkansas Supreme Court Committee on Professional Conduct in a Findings and Order CAUTIONED the petitioner for his conduct in committing at least four violations of the Arkansas Model Rules of Professional Conduct ("Model Rules").

> First, the Committee found that Mr. Stilley violated Model Rule 1.3, which requires that a lawyer act with reasonable diligence and promptness in representing a client, when he knew that a record of lower court proceedings was due to be filed with the Arkansas Supreme Court on or before December 19, 2000, and failed to have the record filed in a timely manner.

> Second, the Committee also found that Mr. Stilley violated Model Rule 3.1, which requires in pertinent part that a lawyer not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, when the Arkansas Supreme Court found his Petition for Rehearing of Motion for Rule on the Clerk to be argumentative and devoid of any legal or factual basis for reversing a previous decision of the Court.

> Third, the Committee also found that Mr. Stilley violated Model Rule 3.2, which requires that a lawyer make reasonable efforts to expedite litigation consistent with the interests of the client, when he failed to accept responsibility in having the transcript of the lower court proceedings filed in a timely manner causing unnecessary delay to his client's case.

> Fourth, the Committee also found that Mr. Stilley violated Model Rule 8.4(d), which requires that a lawyer not engage in conduct that is prejudicial to the administration of justice, when he refused to accept responsibility in a December 28, 2000 Motion for Rule on the Clerk knowing the Arkansas Supreme Court requires an acceptance of responsibility on the moving party in Motions for Rule on the Clerk.

> The Committee apparently again found Mr. Stilley in violation of this same rule when he failed to accept responsibility in a February 6, 2001 Motion for Rehearing of Motion for Rule on the Clerk, knowing that the Arkansas Supreme Court requires an acceptance of responsibility on the moving party in Motion for Rule on the Clerk.

Committee Docket No. 2001-037.

2

On September 17, 2001, petitioner was REPRIMANDED by the Committee for three more violations of the Model Rules.

> First, the Committee found that Mr. Stilley violated Model Rule 3.1, which requires that a lawyer not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes a good-faith argument for an extension, modification or reversal of existing law, when he continued to pursue issues in his appeal in a matter entitled *Stilley v Hubbs,* even though the Supreme Court had handed down a controlling opinion in another appeal, *Stilley v Henson,* contrary to Mr. Stilley's position on the same issues, and when the Arkansas Supreme Court found that by continuing to pursue the *Hubbs* appeal, he was continuing with a frivolous appeal in violation of Rule 11 of the Rules of Appellate Procedure – Civil.

> Second, the Committee also found that Mr. Stilley's conduct violated Model Rule 3.4(c), which requires that a lawyer not knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists, since his conduct in continuing the pursuit of the *Hubbs* appeal, despite the decision in *Henson,* was found to be a violation of Rule 11 of the Rules of Appellate Procedure – Civil.

> Third, the Committee also found that Mr. Stilley's conduct violated Model Rule 8.4(d), which requires that a lawyer not engage in conduct that is prejudicial to the administration of justice. The Committee found this rule to have been violated in two respects, to-wit: (i) the orderly and timely administration and resolution of appellate proceedings before the Arkansas Supreme Court were delayed by Mr. Stilley's continued pursuit of a frivolous appeal in *Hubbs,* and, (ii) Mr. Stilley's continued pursuit of a frivolous appeal before the Arkansas Supreme Court required that court to expend additional time and effort which would not have been necessary otherwise.

Committee Docket No. 2001-060

3

On October 1, 2001, the Committee SUSPENDED Mr. Stilley from the practice of

law for a period of thirty days finding five violations of the Model Rules.

> First, the Committee found that Mr. Stilley violated Model Rule 1.2(a), which requires, in pertinent part, that a lawyer abide by a client's decisions concerning the objectives of representation and abide by a client's decision whether to accept an offer of settlement of a matter, when he pursued an appeal of judgment, although his former client, John Speed, did not wish to pursue such an appeal, and when he failed to inform Mr. Speed of a settlement offer made by opposing counsel, thereby denying Mr. Speedy the opportunity to decide whether to settle.

> Second, the Committee also found that Mr. Stilley violated Model Rule 1.16(a), which requires, in pertinent part, that a lawyer not represent a client if the lawyer is discharged, when he continued to pursue an appeal on behalf of Mr. Speed even though Mr. Speed had discharged Mr. Stilley from representing him and had obtained a Court Order substituting another lawyer to be his counsel.

> Third, the Committee also found that Mr. Stilley's conduct violated Model Rule 3.7 which requires, in pertinent part, that a lawyer not act as an advocate at a trial in which the lawyer is likely to be a necessary witness, when he continued to act as an advocate for himself and Mr. Speed in a lawsuit brought against them even though he was a necessary witness.

> Fourth, the Committee also found that Mr. Stilley's conduct violated Model Rule 8.4(c), which requires that a lawyer not engage in conduct involving dishonesty, fraud, deceit or misrepresentation, when he filed a Notice of Appeal indicating that Mr. Speed wanted to pursue an appeal even though he did not; and when he misled the Appellate Court that Mr. Speed desired an appeal by tendering the record to the Clerk of the Arkansas Supreme Court.

> Fifth, the Committee also found that Mr. Stilley's conduct violated Model Rule 8.4(d), which also requires that a lawyer not engage in conduct that is prejudicial to the administration of justice, because Mr. Stilley did not promptly pay a judgment entered against Mr. Speed pursuant to an indemnity agreement Mr. Stilley prepared and executed, despite a demand by Mr. Speed and opposing counsel, and despite having access to sufficient funds to pay the judgment.

4

> Opposing counsel had to file a declaratory judgment action on the indemnity agreement, and prevail on Mr. Stilley's appeal to the Arkansas Supreme Court, thereby causing the State Circuit Court and the Arkansas Supreme Court to unnecessarily expend judicial resources on the issue.

Committee Docket No. 2001-001. Mr. Stilley also pursued this particular matter in federal court, but ultimately received only further admonition. On September 17, 2001, Mr. Stilley filed in his own name in the U.S. District Court for the Western District of Arkansas a complaint for malicious prosecution and abuse of process. The district court dismissed the complaint with prejudice, finding it to be virtually identical to a previous (counter) claim Mr. Stilley had filed in state court, which the state court had found was barred by the doctrine of *res judicata. James, et al, v Oscar Stilley and John Speed,* case No. 2000-96 G (Sebastian County Cir. Ct., 1997) (sometimes referred to in the submissions as "James II"). The district court found Mr. Stilley's claim for malicious prosecution in federal court to be barred by *res judicata* as well. *Stilley and James, et al.,* Opinion and Order, Civil No. 01-2228, WD Ark., 2/26/02.

The district court, on its own initiative, then ordered Mr. Stilley to show cause why certain conduct in the federal case was not a violation of Rule 11(b), FRCivP. *Id.,* Order to Show Cause dated 4/2/2002. Following a hearing on the Order to Show Cause, the district judge made the following findings:

> The Plaintiff, Oscar Stilley, filed and served a complaint in this case which set forth claims that were barred by the effects of the principals (sic) of *res judicata* and/or collateral estoppel, and were not warranted by existing law or by a non-frivolous argument for the modification of existing law. Mr. Stilley also filed and served a motion to recuse and to alter or amend the judgment, (Doc. #21), which was not based upon legal contentions warranted by existing law or by a non-frivolous argument for the modification of existing

5

law. By filing these pleadings, Mr. Stilley violated Rule 11(b)(2) of the Federal Rules of Civil Procedure. 2/

It is proper to impose sanctions against Mr. Stilley in order to deter repetition of the conduct which has violated Rule 11.

> 2/ Recently, in an action unrelated to this case, the Arkansas Supreme Court ordered Mr. Stilley to show cause in writing why a sanction should not be imposed against him, stating "we are, once again, troubled by Mr. Stilley's unwillingness to recognize precedent and his attempt to breathe life into decisions he previously lost." *White v Priest*, ___ S.W. 2d ___, 2002 WL 535793 (April 10, 2002)(citation omitted).

The federal district court then permanently enjoined Mr. Stilley from filing related new actions in any state or federal court. Order, *Stilley v James,* Civil No. 01-2228, U.S. WD Ark., , May 1, 2002.

Mr. Stilley appealed to the U.S. Court of Appeals for the Eighth Circuit. On September 30, 2002, a three-judge panel in a per curiam decision affirmed the district court in all respects. The appellate court noted that the issue giving rise to the Rule 11 sanctions had been litigated or raised for litigation in three lawsuits and two appeals. "The district court acted appropriately by helping Stilley stop pursuing further litigation." *Stilley v James, et al.,* No. 02-2047/2202 (8th Cir.).

Mr. Stilley was not persuaded by the Eighth Circuit's opinion and petitioned for a rehearing by the panel and for a rehearing *en banc.* The Eighth Circuit denied both requests without further comment. Order Denying Petition for Rehearing and for Rehearing *En Banc, Stilley v James, et al.,* 02-2047/2202 (8th Cir., 11/12/02). Mr. Stilley, however, has now pursued further litigation. He informed this panel he is back in state court seeking to reopen the matter based upon allegations of perjury.

6

The last of the four orders referred to by Judge Quist was entered on n October 17, 2001, when Mr. Stilley was REPRIMANDED by the Committee for at least eight more violations of the Model Rules.

> First, the Committee found that Mr. Stilley violated Model Rule 1.1, which requires that a lawyer provide competent representation to a client including the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation, when he failed to be thorough enough in his representation of a Mr. Scamardo to ensure that all deadlines set by the Scheduling Order in the lawsuit he filed on Mr. Scamardo's behalf were met.

> Second, the Committee also found that Mr. Stilley's conduct violated Model Rule 1.3, which requires that a lawyer act with reasonable diligence and promptness in representing a client, when he failed to file timely discovery requests on Mr. Scamardo's behalf.

> The Committee also apparently found Mr. Stilley to be in violation of the same rule when he failed to file a timely lawsuit for the residents of Fort Smith who wished to challenge the validity of their 1996 taxes payable in 1997.

> Third, the Committee also found that Mr. Stilley violated Model Rule 1.4(a), which requires that a lawyer keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information, when he failed to keep Mr. Scamardo informed about the status of his lawsuit.

> Fourth, the Committee also found that Mr. Stilley's conduct violated Model Rule 3.1, which requires, in pertinent part, that a lawyer not bring a proceeding, or assert an issue therein, unless there is a basis for doing so that is not frivolous, which includes a good-faith argument for an extension, modification or reversal of existing law, when he included allegations in a lawsuit entitled *Chapman v Bevilacqua, et al,* concerning practices of the City of Fort Smith, even though the City was not a party to the action.

> The Committee also apparently found Mr. Stilley to be in violation of th same rule when he continued to pursue an action against tax officials of the Fort Smith District of Sebastian County on behalf of Earl Oxford, even though Mr. Oxford was a taxpayer of the

7

Greenwood district of Sebastian County, a separate taxing district, and this venue problem had been timely brought to Mr. Stilley's attention.

Fifth, the Committee also found that Mr. Stilley violated Model Rule 3.2, which requires that a lawyer to make reasonable efforts to expedite litigation consistent with the interests of his client, when he failed to file the lawsuit on behalf of the named Fort Smith taxpayers before the issue became moot because the taxes had already been voluntarily paid.

Sixth, the Committee also found that Mr. Stilley violated Model Rule 3.3(a)(1), which requires, in pertinent part, that a lawyer not make a false statement of material fact to a tribunal, when he mistakenly averred to the Court that a Mr. Bruce gave him consent or permission to file a lawsuit on his behalf by listing Shelly Bruce as a plaintiff in an action he filed.

Seventh, the Committee also found that Mr. Stilley's conduct violated Model Rule 4.4, which requires, in pertinent part, that in representing a client a lawyer not use means that have no substantial purpose other than to embarrass, delay or burden a third person, when he included allegations in a case entitled *McCutchen v Patton, et al,* about city officials of Fort Smith and the Multi-Ethnic Commission concerning the use of a $20,000 appropriation which were baseless, and when he included allegations concerning the spending and taxing practices of the City of Fort Smith, a non-party to the action.

Eighth, the Committee also found that Mr. Stilley violated Model Rule 8.4(c), which requires that a lawyer not engage in conduct involving dishonesty, fraud, deceit or misrepresentation, when he filed a lawsuit listing Shelly Bruce as a party that Mr. Stilley represented, without securing either written or direct oral permission from Mr. Bruce to do so, and instead relied on the representations of a third party as to Mr. Bruce's permission.

Prior to a public hearing on the violations contained in the fourth order, "Mr. Stilley approached the Executive Director with a proposal for discipline by consent. The proposal, as reflected by this Order [of the Committee] and approved as to form, was presented to the Committee, with the

8

concurrence of the Executive Director, and was approved by the Committee." Findings and Consent

Order of the Committee in Docket No. 2001-006 filed October 17, 2001.

As noted, all of the violations of the Model Rules listed above were contained in four

separate proceedings before the Committee. At the hearing on his petition in this court, Mr. Stilley

indicated he had had the right to appeal any of these four proceedings to the Arkansas Supreme

Court, but that he had chosen not to do so.[1]


### Certificate of Good Standing

In support of his Petition for Admission, Mr. Stilley submitted a Certificate of Good

Standing from the Arkansas Supreme Court, dated October 2, 2003. In the Certificate, the Clerk of

the Court by a deputy certifies that:

> Oscar Stilley was enrolled as an Attorney at Law and Solicitor in
> Chancellery by the Supreme Court of this state on April 15, 1991;
> that no disbarment proceedings have been filed against him in this
> court, that he has not had any adverse disciplinary action whatsoever
> during the past three year period, and that his private and professional
> character appear to be good.

Upon questioning by this panel, Mr. Stilley conceded that the Certificate he had

presented appeared flawed on its face, since he had certainly experienced disciplinary action during

the three years immediately preceding October 2003.

The Certificate also stated that the seal of the Arkansas Supreme Court has been

affixed to it, but in fact no seal was apparent.

---

[1]The panel was informed by petitioner that he has also received a couple of warning letters
from the Committee regarding other matters, and he states these letters cannot appealed. The panel
has decided these letters need not be considered.

Following the hearing, the panel received, unsolicited, a new Certificate of Good Standing from the Arkansas Supreme Court, dated January 12, 2004,  which had been obtained by the U.S. Attorney's Office.  This certificate does bear the seal of the court, but the following words have been stricken:

> "that he has not had any adverse disciplinary action whatsoever during the past three year period, and that his private and professional character appear to be good."

The U.S. Attorney's Office also sent a copy of the new Certificate to Mr. Stilley on January 13, 2004, who has to this date filed nothing in response to it.  Although Mr. Stilley sent a letter concerning his Petition generally to the Chief Judge of this court on January 20, 2004, he made no mention of the new Certificate in the letter.  Presumably, Mr. Stilley does not object to the panel considering the new Certificate rather than the one originally offered.

### Discussion

In affording a dissatisfied petitioner for admission a hearing before the court, the panel is to follow the hearing procedure set forth in Local Criminal Rule 57.1(m)(iii).[2]  At the hearing, "the attorney shall have the burden of demonstrating by clear and convincing evidence that:

(1)    the attorney has complied with the orders of discipline of this court and all other disciplinary authorities;

(2)    the attorney has not practiced in this court during the period of disbarment or suspension and has not practiced law contrary to any other order of discipline;

(3)    the attorney has not engaged in any other professional misconduct since disbarment or suspension;

---

[2]A parallel provision is found in Local Civil Rule 83.1.

10

(4)    the attorney has the moral qualifications, competency and learning in the law required for admission to practice law before this Court; and

(5)    the attorney's resumption of the practice of law will not be detrimental to the integrity and standing of the bar or to the administration of justice, or subversive of the public interest."

Petitioner agreed at the hearing that it is not the function of this panel to reevaluate the merits of the disciplinary actions taken against him in his home jurisdiction. The panel gave Mr. Stilley the opportunity to review some of these rule violations (he chose not to address all of them) to provide some context for them from Mr. Stilley's perspective and to help the panel determine the sufficiency of the proceedings in Arkansas. But where, as here, these Findings and Orders appear fully explained and proper on their face, and have not been appealed by Mr. Stilley (indeed, the most recent reprimand was entered with his consent), and it does not appear Mr. Stilley was denied due process by the Arkansas authorities, this court will accept as final and valid the four Findings and Orders of the Arkansas Supreme Court Committee on Professional Conduct. It is the policy of this court, as manifested in its various rules, to give reciprocity to the disciplinary actions of other jurisdictions. See, for example, W.D. Mich. LCivR 83.1(m) and W.D. Mich. LCrR 57.1(m), pertaining to discipline by other jurisdictions; see also, Michigan Court Rule 9.104(B):[3]

Proof of an adjudication of misconduct in a disciplinary proceeding by another state or United States Court is **conclusive** proof of misconduct in a disciplinary proceeding in Michigan. The only issues to be addressed in the Michigan proceeding are whether the respondent was afforded due process of law in the course of the original proceedings and whether imposition of

---

[3]An attorney admitted to the bar of this court subjects himself or herself to the Michigan Rules of Professional Conduct and the disciplinary procedures prescribed by the State of Michigan for all attorneys. See, W.D. Mich. LCivR 83.1(j); W.D. Mich. LCrR 57.1(j).

11

identical discipline in Michigan would be clearly inappropriate.[4]
(emphasis added)

Thus, it becomes the obligation of Mr. Stilley to show by clear and convincing evidence that, in light of a rather lengthy list of professional rule violations, his practice of law in this district will not be detrimental to the integrity and standing of the bar of this court, or to the administration of justice or subversive to the public interest in this district.

Petitioner has failed to meet this obligation in several respects. First, the disciplinary record of the petitioner in his home state has been extensive in length, and disciplinary proceedings are ongoing. He has been found to have been in violation of the Model Rules of Professional Conduct of that jurisdiction approximately twenty times. Frankly, the members of the panel cannot recall any other applicant to the bar of this court having had anything approaching twenty rule violations. Moreover, these violations are relatively recent and arise from several different cases. Petitioner has failed to show why accepting one with this disciplinary record would not be damaging to the integrity and standing of the bar, since to do so would send a message to the bar and to the public that this court tacitly countenances petitioner's apparent inability to conform his practice to well recognized rules. This court would not tolerate this level of conduct from its present members. By accepting this petition, the court would be effectively lowering the standard to which it holds all attorneys who appear before it.

Nor has petitioner shown that his admission would not be detrimental to the administration of justice if his present conduct continues. The harm could be immediate or long

---

[4]As indicated, there has been no showing of a lack of due process regarding the disciplinary actions discussed above. Moreover, the discipline imposed certainly seems commensurate with the violations established.

term. For example, were petitioner again suspended from practice in Arkansas, but this time while representing a client in this court, his suspension would directly impact the proceedings in this court, due to the reciprocity this court affords disciplinary actions in other jurisdictions.

On the other hand, petitioner's involvement in a criminal proceeding might well set the stage for allegations of ineffective assistance of counsel down the road were petitioner to represent a criminal defendant who was eventually convicted. The rule violations the Arkansas authorities have determined that petitioner has committed would be highly prejudiced in a criminal setting. For example, Arkansas has determined that Mr. Stilley failed to file a record in a timely manner, and on a separate occasion failed to file a timely lawsuit; that he filed a frivolous appeal; that he pursued an appeal on behalf of a client who did not wish to pursue that appeal, and who had in fact discharged him; that he failed to inform a client of a settlement offer; that he acted as an advocate despite a conflict of interest; that he did not ensure scheduling deadlines were met; and that he did not keep his client informed. Any violations similar in nature to one of these in a federal criminal case where a client Mr. Stilley was defending was convicted, could lead to allegations of ineffective assistance of counsel and a reversal.

Admittedly, one must deal in probabilities when trying to ascertain whether future problems will occur. But here the panel is not faced with a blank slate. Petitioner has an extensive track record. And unfortunately his explanation of it seems in large part an attempt to minimize his deprecations or explain them away, and does little to convince the panel that petitioner fully appreciates where this type of behavior is leading an otherwise bright and articulate lawyer.

Mr. Stilley would like the panel to look past his difficulties to date. He asserted at his hearing that he is making changes for the better, for example, in his office procedures.

13

Unfortunately, it appears that his difficulties with the Committee and the Arkansas Supreme Court are not over. On May 17, 2002, the Supreme Court of Arkansas entered an Order striking a brief Mr. Stilley had filed in that court. Order Entered Striking Brief, *White v Priest, et al,* No. 02-284, May 17, 2002. In its order, the Supreme Court began by stating that, "[i]n view of Mr. Stilley's continued strident, disrespectful language used in his pleadings, motions and arguments, and his repeated refusal to recognize and adhere to precedent, Mr. Stilley's 70-page brief should be stricken entirely." The court then set forth a dozen paragraphs from Mr. Stilley's brief which it cited as "examples of the general tone of disrespect for the code of ethics and Mr. Stilley's breach of his oath of office as an attorney at law. That disrespect for the court pervades Mr. Stilley's brief." The court went on to state that it found "Mr. Stilley's intemperate and distasteful language spread throughout all of his brief." "We conclude that Mr. Stilley's brief is an inexcusable breach of the obligation of professional conduct that this court expects of the members of the bar". The Supreme Court finished by directing that all copies of Mr. Stilley's brief be stricken in their entirety from the files of that court. The Supreme Court referred Mr. Stilley to the Professional Conduct Committee, to take whatever action the latter believed Mr. Stilley's actions warranted under the Model Rules of Professional Conduct, where the matter continues to linger to this day.[5]

        Finally, the court is concerned with what appears to be petitioner's lack of understanding and/or disregard of precedent, as indicated by the several courts that have found it

---

[5]Mr. Stilley indicated to this court that he attempted to depose the members of the Arkansas Supreme Court as part of this proceeding, but that the Court had quashed his subpoenas. He also indicated he has recently filed a federal lawsuit against the Justices of the Arkansas Supreme Court, both in their official and individual capacities, which is presently pending. According to a January 20, 2004 letter petitioner sent to the court, discussed *infra,* petitioner has apparently also moved to recuse the Justices in an unrelated case.

necessary to chastise Mr. Stilley for his inability to accept rulings based on *res judicata.* See, Order of Judge Dawson dated May 1, 2002, *supra;* per curium decision of the United States Court of Appeals for the Eighth Circuit filed September 30, 2002, *supra; White v Priest,* ___ S.W. 2nd ___, 2002 WL 535793 (April 10, 2002), *supra.* Petitioner also informs the court that in a case from the Sebastian, Arkansas, Circuit Court, he was sanctioned under Rule 11 and ordered to pay attorney's fees to the defendant government agencies. Here again, according to petitioner, "the primary and decisive matter was *res judicata.* I claimed that my client was not bound by *res judicata* . . ." The Arkansas Supreme Court affirmed the sanctions against Mr. Stilley.[6] Mr. Stilley moved for rehearing and moved for recusal of the sitting Justices on rehearing. These motions are pending. Letter from petitioner to Chief Judge Bell, dated January 20, 2004. Petitioner's refusal or inability to conform his practice to generally accepted principles of law directly impacts the administration of justice.

### A Litigant's Constitutional Right to Counsel of Choice

Mr. Stilley contends that a defendant in a criminal case pending in this court wants him to represent her. This is the reason for his petition. Assuming, *arguendo,* this to be the case, and while it is true that there is a constitutionally based right to counsel of choice, it is well established that the right is not absolute. *Wheat v United States,* 486 U.S. 153, 159 (1988) ("the Sixth Amendment right to choose one's own counsel is circumscribed in several important respects. Regardless of his persuasive powers, an advocate who is not a member of the bar may not represent clients (other than himself) in court."); *United States v Dinitz,* 538 F.2d 1214, 1219 (5th Cir. 1976)

---

[6]It appears from the case number in the Arkansas Supreme Court (03-261) that the sanctions were affirmed in 2003.

(en banc) (recognizing a Sixth Amendment right to counsel in a criminal case, but only a limited right to counsel of choice, and affirming the disqualification of counsel on account of misconduct impeding the orderly administration of justice); *see also, McCuin v Texas Power & Light Company,* 714 F.2d 1255, 1262, n. 21 (5th Cir. 1983) ("while the right to counsel is fundamental, there is no absolute right to a particular lawyer," citing *Dinitz*). When a defendant is denied the counsel he prefers, the constitutional concern is whether he receives an effective advocate. *Wheat,* 486 U.S. at 159. If he does receive effective assistance of counsel, the denial of his choice of attorney does not violate his constitutional rights. *Id.*

Accordingly, a litigant's freedom to hire the lawyer of his or her choice can be overridden if a court finds that the choice would interfere with the orderly administration of justice. *In Re: Bell South Corporation,* 334 F.3d 941 (11th Cir. 2003); *Dinitz,* 538 F.2d at 1219; *Panzardi-Alvarez v United States,* 879 F.2d 975, 980 (1st Cir. 1989). "There is some point short of allowing a defendant complete freedom in choosing his own counsel at which the Sixth Amendment's prescription is satisfied. To hold otherwise would necessarily condemn, for example, even local bar admission requirements, and no one would seriously maintain that the Sixth Amendment requires that." *Dinitz,* 538 F.2d at 1219. In short, a criminal defendant's preference for a particular attorney does not mandate this court disregard its reasonable bar admission requirements.

## Conclusion

Petitioner's string of disciplinary proceedings in Arkansas has raised legitimate concerns about the detrimental effect his admission to practice in this district may have. Petitioner has not dispelled these concerns; he has not demonstrated over an adequate period of time that these problems are truly a thing of the past rather than part of a continuing pattern of behavior. Petitioner

16

has failed to satisfy his burden under the rule and therefore his petition for admission will be

DENIED.

Dated: January 27, 2004

ROBERT HOLMES BELL
CHIEF U.S. DISTRICT JUDGE

17

IN RE: Petition for Admission of Oscar Amos Stilley
Case No.: 1:04-MC-0009

Copy Distribution List

Copies of the attached Opinion dated January 27, 2004 were provided to the following:

Chief Judge Bell
Judge Enslen
Judge McKeague
Judge Quist
Senior Judge Miles

Magistrate Judge Brenneman
Magistrate Judge Greeley
Magistrate Judge Scoville
Magistrate Judge Carmody

Judge Jo Ann C. Stevenson, United States Bankruptcy Court
Donald A. Davis, Assistant United States Attorney

Ronald C. Weston, Clerk
Kelly Van Dyke, Operations Supervisor
Julie Lenon, Attorney Maintenance Clerk

Oscar A. Stilley

Dated: January 28, 2004

Kathleen A. Devlin, Administrative Secretary